1  DAVID J. GALLO *(California Bar No. 127722)*
   **LAW OFFICES OF DAVID J. GALLO**
2  12702 VIA CORTINA, SUITE 500
   DEL MAR, CALIFORNIA  92014
3  Telephone: (858) 509-3652

4  Attorneys for Plaintiffs,
   S. WESTRON, and J. MILNE
5

6
                    **UNITED STATES DISTRICT COURT**
7

8                   **NORTHERN DISTRICT OF CALIFORNIA**

9
   S. WESTRON, and                    | Case Number:
10 J. MILNE,                          |
11        Plaintiffs,                 | **4:22-cv-03147-YGR**
12 v.                                 |
13 ZOOM VIDEO                         | **RESPONSE  TO  ORDER  TO  SHOW**
       COMMUNICATIONS, INC., a        | **CAUSE RE: MONETARY SANCTIONS**
14     Delaware corporation,          | **[Document 26]**
15        Defendants.                 |
16                                    | **CLASS ACTION**
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION...................................................................................................................5

Format........................................................................................................................6

Defendant's Other Claims..........................................................................................8

CONCLUSION...............................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Bhatia v. Office of U.S. Atty., Northern Dist. of Cal.,*
2011 WL 1298763 (N.D. Cal. 2011)...............................................................20

*Negrete-Ramirez v. Holder,* 741 F.3d 1047 (9th Cir. 2014).........................................7

*Marshall v. Gates,* 44 F.3d 722 (9th Cir. 1995)...........................................19

*Meyer v. T-Mobile USA Inc.,* 2012 WL 2906051 (N.D. Cal. 2012)....................19-20

*PSM Holding Corp. v. National Farm Financial Corporation,*
2013 WL 12080306 (C.D. Cal. 2013).............................................................19

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 23(a), Fed.R.Civ.P...................................................................................6

Rule 23(b), Fed.R.Civ.P...................................................................................6

Rule 26(f), Fed.R.Civ.P..............................................................................8, 13

Rule 26(f)(3), Fed.R.Civ.P...............................................................6-7, 17, 19-20

## FEDERAL RULES OF EVIDENCE

Rule 201(f), Fed.R.Evid..................................................................................19

## LOCAL RULES, NORTHERN DISTRICT OF CALIFORNIA

Civil L.R. 3-4(c)...........................................................................................15

Civil L.R. 3-4(c)(2)(B)....................................................................................7

Civil L.R. 16-8................................................................................6-7, 17, 20

Civil L.R. 16-9..................................................................................6, 17, 20

Civil L.R. 16-9(b)..............................................................................................6, 7

Civil L.R. 16-9(b)(3)..........................................................................................6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

### ADR RULES, NORTHERN DISTRICT OF CALIFORNIA

ADR L.R. 3.5(d)(1).............................................................................

### OTHER AUTHORITY

Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement **("Standing Order")**........6-8, 17, 20

Central District Local Rule 11-3.1.1.........................................................7-8

Southern District Local Rule 5.1(a)..............................................................8

1   This Response to Order to Show Cause re: Monetary Sanctions is filed on
2   behalf of Plaintiffs, S. Westron and J. Milne **(hereinafter "Plaintiffs"):**

3

4   ## INTRODUCTION

5   The Court's Order raises two issues, *viz.:* (a) failure to comply with this
6   District's Local Rules regarding the preparation of the case management statement;
7   and (b) "... basic professional courtesy in terms of sharing editable documents."  The
8   Court has directed a particularized response to the following statement Defendant has
9   inserted into the Case Management Statement:

10      "Plaintiffs insisted on structuring this report in a way that departs
11      from the Court's Standing Order and that greatly increases the length of
12      this report, *e.g.,* by including duplicative sections, quoting in full each
13      section's requirements, and using 14-point font. Zoom repeatedly asked
14      Plaintiffs' counsel to agree to streamline the document to avoid
15      duplication and to make it shorter, but Plaintiffs' counsel repeatedly
16      refused without justification. Plaintiffs' counsel also repeatedly refused
17      to give Zoom a version of the document it could edit, hindering attempts
18      by Zoom to fix formatting. In order to provide the Court with a joint
19      report and to minimize the burden on the Court, Zoom decided to
20      overlook these disagreements but has attempted to address each topic
21      only once, starting with Section 8 below."

22   (*See, ex rel.,* Case Management Statement, Document 25, at 2:20-28.)

23   ///

24   ///

25   ///

26   ///

27

28

**Format:** The Case Management Statement begins with the matter which is expressly required by Rule 26(f)(3) of the Federal Rules of Civil Procedure. That matter is a Paragraphs 1 through 6, and it is set out in the same order as Rule 26(f)(3), itself.

Paragraphs 7 through 32 of the Case Management Statement sets out exactly what is required by the Local Rules of this Court, and does so in the exact order listed in Civil L.R. 16-8 through 16-9. Paragraph 7 pertains to ADR, and is inserted pursuant to ADR L.R. 3.5(d)(1), which provides, *inter alia:*

> "... Counsel must include in their joint case management statement a report on the status of ADR, specifying which ADR process option they have selected and a proposed deadline by which the parties will conduct the ADR session or, if they do not agree, setting forth which option and timing each party prefers. ..."

(*See,* ADR L.R. 3.5(d)(1).)

Paragraphs 8 through 28 are the twenty-one (21) separate items expressly required by the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement **(hereinafter the "Standing Order"):**

> https://www.cand.uscourts.gov/wp-content/uploads/judges/Standing_
> Order_All_Judges_11.1.2018.pdf

*... and they are set out in the exact order listed therein.*

Paragraphs 29 through 32 set out the material required by Civil L.R. 16-9(b) in regard to proposed class actions. Civil L.R. 16-9(b)(3) requires, "Facts showing that the party is entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b) ..." Civil L.R. 16-9(b)(3) demands a lot of information, and Plaintiffs have provided only what that Rule requires.

Plaintiffs' undersigned counsel did not understand that the matter required by the Local Rules of this Court are to be *in lieu of,* and not in addition to, the matter expressly required by Rule 26(f)(3) of the Federal Rules of Civil Procedure. Plaintiffs' undersigned counsel has not located any language within Local Rules of this Court which suggest that the matter expressly required by Rule 26(f)(3) of the Federal Rules of Civil Procedure should have been excluded, or somehow inserted into the paragraphs required by the Local Rules of this Court. The Standing Order commands that, "[t]he parties *must include* ...", the twenty-one (21) items enumerated therein. (Emphasis added.) It does **not** state that they are *in lieu of* either the matter expressly required by Rule 26(f)(3) of the Federal Rules of Civil Procedure, or the matter expressly required by Civil L.R. 16-8 and Civil L.R. 16-9(b) (and its subparts), or the matter expressly required by ADR L.R. 3.5(d)(1). Plaintiffs' undersigned counsel interpreted the requirements of these various rules as separately applicable, because to consider the Standing Order to be the exclusive list of required contents would have rendered mere surplusage the similar (and perhaps overlapping) requirements of Rule 26(f)(3), Civil L.R. 16-8 and Civil L.R. 16-9(b), and ADR L.R. 3.5(d)(1). *Cf.: Negrete-Ramirez v. Holder,* 741 F.3d 1047, 1053 (9th Cir. 2014), applying the, "... basic principle of statutory interpretation that legislative enactments should not be construed to render their provisions mere surplusage." (Citation, internal quotation marks, and attribution omitted.) Plaintiffs' undersigned counsel's reliance upon this "basic principle" of statutory construction was both objectively reasonable, and in good faith.

The use of a 14-point typeface is expressly permitted by the Local Rules of this Court. Civil L.R. 3-4(c)(2)(B) directs that documents shall be, "... in 12 point type *or larger* ..." (*See,* Civil L.R. 3-4(c)(2)(B). [Emphasis added.]) Other federal courts within this Circuit *require* use of 14-point text. (*See, e.g.,* Central District Local Rule

1  11-3.1.1. ["... 14-point or larger ..."].) (*See, e.g.,* Southern District Local Rule 5.1(a).

2  ["... no smaller than 14-point standard font ..."].)

3       Plaintiffs' undersigned counsel is unaware of how the format of the Case

4  Management Statement might not be in compliance with the plain language of the

5  Local Rules of this Court, including the incorporated Standing Order. It is clear from

6  the Court's Order to Show Cause that this Court has concluded that it is ***not*** in

7  compliance. Plaintiffs' undersigned counsel is hopeful that the Court might please

8  provide some guidance on the formatting issue in its forthcoming order re: monetary

9  sanctions.

10

11       **Defendant's Other Claims:** Defendant's other claims are either untrue or

12  grossly exaggerated. All communication between counsel subsequent to the Rule

13  26(f) conference has been by e-mail. (*See,* Gallo Declaration, at ¶ 4.) Relevant e-

14  mails are attached within Exhibit "A" to the accompanying Gallo Declaration, and will

15  be quoted herein.

16       As a preliminary matter, the Court should be aware that counsel for the

17  opposing sides use different word processing programs, which creates incompatibility.

18  Plaintiffs' undersigned counsel uses WordPerfect (a Corel product); Defendant's

19  counsel uses Microsoft Word. (*See,* Gallo Declaration, at ¶ 6.) WordPerfect can open

20  a Word document, but formatting, paragraph auto-numbering, headings, and footers

21  are often lost or distorted, and random codes are often inserted into the document; all

22  these make it very difficult to accurately convert a court pleading from Word to

23  WordPerfect. (*See,* Gallo Declaration, at ¶ 7.) (Court pleadings are complex

24  documents, containing numbered lines, footers, case captions, *etc.*)

25       At the parties' Rule 26(f) conference, Plaintiffs' undersigned counsel undertook

26  to send a draft proposed Case Management Statement to Defendant's counsel by

27

28

Monday, 29 August 2022.  (*See,* Gallo Declaration, at ¶ 8.)  It was completed and sent the prior Friday (*i.e.,* three days early), but ***initially*** only sent as a pdf.  (*See,* Gallo Declaration, at ¶ 8.)

**Plaintiffs' undersigned counsel's transmittal e-mail states, *in toto:***

"Counsel,

"I have managed to get the attached to you three calendar days early, although I would like to have been able to get it to you earlier in the day. (I just barely managed to finish it now.)

"As we discussed during our Rule 26(f) conference:

"(a)    Defendant should send me its inserts, and I will incorporate them and send the document back to you for verification. **As we use WordPerfect, and not Microsoft Word, please send Defendant's inserts as both pdf, and plain text in the body of an e-mail.**

"(b)    I am willing to discuss with you any changes to language in any of Plaintiffs' Views and Proposals which might enable us to create one or more joint Proposals.

"When Defendant sends its inserts, please be sure to number them from 1 through 32, so I will know where to place each one within the document.

"Thank you,

"David Gallo"

(*See,* E-mail of Friday, 26 August, 1847 hours, Gallo Declaration, Exhibit Page 5.)

**Defendant responded as follows:**

"David -

"Thank you for the draft.

"Please send us a WordPerfect or Word version of the document

that we can edit.

"We did not discuss point (a) below at all during our conference on Monday. Having Zoom only being able to 'edit' a joint submission by sending you suggested edits in the body of an email or in a PDF that you will then add to the master document is not workable, joint, or fair in any fashion, let alone for a joint submission with 32 separate parts. It will necessarily create substantial inefficiencies for both sides and significant prejudice to Zoom.

"Ben"

(*See,* E-mail of Saturday, 27 August, 0915 hours, Gallo Declaration, Exhibit Page 6.)

**Plaintiff responded as follows:**

"Counsel,

"I will gladly do that as long as we agree as follows:

"(a)    Defendants will not make any changes whatsoever to the 'Plaintiffs' Views and Proposals', but will only insert 'Defendants' Views and Proposals' in the appropriate places; and

"(b)    the document will be returned to me in Corel WordPerfect, as currently formatted, for review. Defendant will not under any circumstances convert the document to Microsoft Word.

"There may be changes or additions Plaintiffs would thereafter make to Plaintiffs' portion based upon Defendant's insertions. If that were to occur, we would send you a redline and you would have an opportunity to make responsive changes or additions to Defendant's portion.

"**Is that agreed?**

"David Gallo"

(*See,* E-mail of Saturday, 27 August, 1201 hours, Gallo Declaration, Exhibit Page 7.)

**Defendant responded as follows:**

"David –

"We can't agree to #2 because we use Word, so it would defeat the purpose of a working copy if we were not allowed under any circumstances to convert to Word.

"Why don't you send the WordPerfect copy, we will work on our sections in the doc and then we will send you a PDF of our edits together with a Word version, which we understand you can open in WordPerfect. We may also have a tool at the firm that will allow us to convert to WordPerfect, but we're still investigating (apparently Word can open .wads but cannot save back into that format).

"That way you get what you requested in the first instance (a PDF copy with our edits shown) and you also will have a working copy that you should be able to copy-and-paste from into the live doc.

"Ben"

(*See,* E-mail of Sunday, 28 August, 0954 hours, Gallo Declaration, Exhibit Page 8.)

**Plaintiffs responded as follows:**

"Counsel,

"I don't understand why you can't just send inserts of Defendant's language and Plaintiff can insert them into the document. What are your concerns? You may be assured that we will input what you send faithfully, and I will get it back to you rapidly so you can verify that this has been done correctly. A pdf is searchable, and can even be made into a Word document if you need that later for some reason.

"David Gallo"

(*See,* E-mail of Sunday, 28 August, 2241 hours, Gallo Declaration, Exhibit Page 9.)

**Defendant responded as follows:**

> "Because we need to run it by our client and you are forcing us to have them review either two separate documents or have us copy and paste unforrmatted [*sic*] text from PDF into a Word document, reformat the whole thing, then send them the doc.

> "I don't see why you won't send us the WordPerfect copy. You will end up in the same place, where you can just copy and paste our inserts into your working copy - as I mentioned, we can send you a PDF with our insertions shown like you originally requested. You're just causing us to do a lot more work for nothing.

> "Another alternative is we file two totally separate documents and we inform the court that you wouldn't send us a document we could edit for what is supposed to be a joint report."

(*See,* E-mail of Monday, 29 August, 0658 hours, Gallo Declaration, Exhibit Page 10.)

**At 2:07 p.m. on Monday, 29 August, Plaintiffs' undersigned counsel sent the WordPerfect version as requested,** notwithstanding Plaintiffs' undersigned counsel's well-founded concern that Defendants' counsel would convert the document from its native format into Microsoft Word (which would create more work for Plaintiffs' side in finalizing the document in WordPerfect for conversion to pdf for filing). (*See,* Gallo Declaration, at ¶ 9, at Exhibit Page 11 thereto.)

**Plaintiffs' undersigned counsel's transmittal e-mail states, *in toto*:**

> "Next time, if you give the explanation up front, it could save us some time.

> "David Gallo"

(*See,* E-mail of Monday, 29 August, 1407 hours, Gallo Declaration, Exhibit Page 11.)

1    Defendant has now reported to this Court:

2    "Plaintiffs' counsel ... repeatedly refused to give Zoom a version of the

3    document it could edit, hindering attempts by Zoom to fix formatting."

4    (*See, ex rel.,* Case Management Statement, Document 25, at 2:24-26.)

5    Defendant's above-quoted report is inaccurate. The parties were negotiating a

6    means to overcome Defendant's counsel's use of an incompatible word processing

7    program. Defendant has failed to disclose this important incompatibility issue to the

8    Court. Nowhere in the written communications – which are the exclusive

9    communications – did Plaintiffs' undersigned counsel ever refuse to provide a word-

10   processed version. Defendant ***first*** requested the WordPerfect version on **Saturday,**

11   27 August (*see,* E-mail of Saturday, 27 August, 0915 hours, Gallo Declaration, Exhibit

12   Page 6), and ***Plaintiff sent it at 2:07 p.m. on the very next Court day,*** **Monday,** 29

13   August (*see,* Gallo Declaration, at ¶ 9). The WordPerfect version was provided on the

14   date by which Plaintiffs' undersigned counsel had initially undertaken (during the

15   Rule 26(f) conference) to provide an initial draft case management statement.

16   (*See,* Gallo Declaration, at ¶¶ 8-9.)

17   Two days later, on Wednesday, 31 August, Defendant sent the document back,

18   with Defendant's positions inserted. It is important to note that the version Defendant

19   sent back was in the same long format that Plaintiff had created (although it would

20   have omitted quotations from the rules which set out the requisite contents of the case

21   management statement).[1] The redlined version Defendant sent that day is reproduced

22   at Exhibit "B" to the Gallo Declaration, at Exhibit Pages 19 through 62.

23

24   [1]    It was, and is, the view of Plaintiffs' undersigned counsel that
      quotations from the rules which set out the requisite contents of the case

25   management statement are helpful to the Court. They certainly were intended to

26   be helpful to the Court, so the Court would not have to refer to a separate

27   document to ascertain the requisite contents of the case management statement.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendant's counsel's transmittal e-mail states, *in toto:***

"David,

"Thanks for sending the WordPerfect copy. By the time you sent it, we had already converted to MS Word (please send us the Word Perfect version at the outset in the future). We are sending you back: (1) a PDF redline reflecting all of our section inserts and additional edits, the reasoning for which is described below, (2) a 'clean' PDF, and (3) a Rich Text version so you can copy and paste our insertions.

"We want to flag these bigger picture revisions:

"We've added section numbers and descriptive headings for readability. We also revised the format of sub-headings (removing bolding) to ensure the numbered, bolded headings act as signposts for the Court.

"Adding those descriptive headings confirmed Sections 1-7 are largely duplicative of the sections below. For example, ADR is currently addressed in Section 7 and again in Section 19. Please delete Sections 1-7 and incorporate below what is not duplicative in those sections. Please confirm you will implement this, and then we will plan to do the same for our Sections 1-7.

"With descriptive headings, the descriptions of each section's requirements are unnecessary, and it's not normal to include them since the court is very familiar with the requirements. Since they add to the document's length, we are deleting them.

"In a handful of sections, we agree with your position, and thus we've proposed agreement language for you to implement in lieu of our two different 'views.' We believe the court will want this, as we

discussed on our call.  See Sections 1 (unless you delete, per the second bullet above), 13, 14, 27, 28.  See also Section 24 (proposed introduction language).

"We added our signature block to the caption page.

"We changed the font to size 12, which is the minimum required per L.R. 3-4(c) and standard practice in this district.

"Globally, we've fixed Defendants' to Defendant's in headers (as there is only one defendant).

"We are happy to discuss on a call if easier.  Thank you.

"Darina"

(*See,* E-mail of Wednesday, 31 August, 2115 hours, Gallo Declaration, Exhibit Page 12.)

Plaintiffs' undersigned counsel then accurately transferred Defendant's inserted language into the WordPerfect document, and sent both the pdf ***and the WordPerfect document*** back to Defendant's counsel.  (*See,* Gallo Declaration, at ¶ 11.)

**Plaintiffs' undersigned counsel's transmittal e-mail states, *in toto:***

"Counsel,

"We have endeavored to insert Defendant's views as set out in the document sent to us yesterday.

"We have adopted all proposed agreed statements.

"We have inserted Defendant's section numbers and headings, while retaining our quotations from the applicable rules.

"We replaced all references to 'Defendants' ' with references to, 'Defendant's', including in Defendant's language.

"We have retained Plaintiffs' stylistic judgments, such as text size and bolding of certain headers. If you believe these are inappropriate, I

will take responsibility with the Court.

"Attached is the proposed final pdf for filing, as well as a WordPerfect version for your convenience in later access to the document.

"Please review the attached to confirm that we have properly inserted Defendant's language, and please advise whether the document may be filed.

"If you advise that the document may be filed, I propose that we file it without delay, one or two court days early.

"Thanks,

"David Gallo"

(*See,* E-mail of Thursday, 1 September, 1440 hours, Gallo Declaration, Exhibit Page 13.)

It was at this point that Defendant demanded for the first time that the order of matters set out in the report be changed – this was after Defendant had already sent a proposed final document in the same order as Plaintiffs' draft. (*See,* Exhibit "B" to Gallo Declaration, at Exhibit Pages 19 through 62.)

**<u>Defendant's e-mail states:</u>**

"David –

"We are reviewing for content. But **<u>we insist</u>** that the report (a) follow the order set forth in the Standing Order for All Judges of the Northern District of California, (b) does not include the notes on content from the Standing Order, and (c) is in 12 point font. Judges here are used to receiving the 26(f) report in that format (which is no doubt the reason why they put it in an Order). And Judge Gonzalez Rogers's Standing Order, Section 6 specifically says that 'The format shall follow the

1   Standing Order for All Judges of the Northern District of California re:

2   Contents of Joint Case Management Statement ("'CAND CMC

3   Order'").' In addition, the ND Cal Standing Order says that 'except in

4   unusually complex cases, [the report] should not exceed ten pages:'

5   "Ben"

6   (*See,* E-mail of Thursday, 1 September, 1525 hours, Gallo Declaration, Exhibit Page

7   14. [Emphasis added.])

8   Plaintiffs would note here that the parties agree that the Case Management

9   Statement should comply with all rules and orders of the Court.  However, as

10  explained above, the Case Management Statement is exactly as prescribed by Rule

11  26(f)(3) of the Federal Rules of Civil Procedure, Civil L.R. 16-8 through 16-9, and the

12  Standing Order.  It includes all information required by those rules and that order, in

13  the same order set out in those rules and that order.  It was also understandably quite

14  vexing for Defendant to "insist" that the order of the Case Management Statement be

15  changed after Defendant had already sent a proposed final document in the original

16  order – and the filing deadline was approaching.  (*See,* Exhibit "B" to Gallo

17  Declaration, at Exhibit Pages 19 through 62.)

18  Plaintiffs' undersigned counsel's next e-mail does reveal a bit of frustration, and

19  mirrors the strident language which Defendant's counsel had used (*i.e.,* "insist").

20  **That e-mail states, *in toto*:**

21  "We insist that it be filed in the current format. Let me know if I

22  should file it, or if I should report to the Court that the parties could not

23  agree on a joint report.

24  "David Gallo"

25  (*See,* E-mail of Thursday, 1 September, 1623 hours, Gallo Declaration, Exhibit Page

26  15.)

27

28

Defendant responded by sending a revised draft, which, *inter alia,* withdrew many of the agreed joint statements which had been included in Defendant's prior draft (all of which Plaintiffs had previously accepted).  Defendant's revised draft is reproduced at Exhibit "C" to the Gallo Declaration, at Exhibit Pages 63 through 103. This is the point at which Defendant's footnote 1 first appeared in the circulating drafts.  (*See,* Gallo Declaration, at Exhibit Page 65.)

**Defendant's transmittal e-mail states, *in toto:***

"David,

"In light of your refusal to edit the structure of the report to streamline it for the Court's benefit, we have made further edits to our sections. These are attached in both an RTF format and a PDF showing our edits in track changes.

"Please implement and recirculate to us for review before filing.

"Thanks,

"Darina"

(*See,* E-mail of Friday, 2 September, 1106 hours, Gallo Declaration, Exhibit Page 16.)

Plaintiffs' undersigned counsel then ***again*** accurately transferred all of Defendant's changes into the WordPerfect document, and sent both the pdf ***and the WordPerfect document*** to Defendant's counsel.  (*See,* Gallo Declaration, at ¶ 13.) (Please note that Plaintiffs had made absolutely no changes to their version of the document from the time it had originally been sent to Defendant's counsel for review; Defendant was the only party demanding sequential changes to its own language.)

**Plaintiffs' undersigned counsel's transmittal e-mail states, *in toto:***

"Counsel,

"Attached please find proposed joint case management statement, in both pdf and WPordPerfect [*sic*].

---

**RESPONSE TO ORDER TO SHOW CAUSE RE: MONETARY SANCTIONS [Document 26] – PAGE 18**

1
2

      "I have endeavored to make the changes exactly as I understood you to want them.

3

        "Please advise whether I am authorized to file the attached.

4
5

        "If it is filed before Monday, I will change the date at time of filing.

6

        "Thank you,

7

    "David Gallo"

8

(*See,* E-mail of Friday, 2 September, 1622 hours, Gallo Declaration, Exhibit Page 17.)

9
10

      Defendant then approved the document, and it was filed. (*See,* E-mail of Friday, 2 September, 1739 hours, Gallo Declaration, Exhibit Page 18.)

11

      Defendant has now reported to this Court:

12
13
14

      "... Zoom repeatedly asked Plaintiffs' counsel to agree to streamline the document to avoid duplication and to make it shorter, but Plaintiffs' counsel repeatedly refused without justification. ..."

15
16
17
18
19
20

(*See, ex rel.,* Case Management Statement, Document 25, at 2:22-24.)  It is true that Defendants asked that Plaintiffs delete the matter which is expressly required by Rule 26(f)(3) of the Federal Rules of Civil Procedure. (*See,* E-mail of Wednesday, 31 August, 2115 hours, Gallo Declaration, Exhibit Page 12.)  It was, and is, the understanding of Plaintiffs' undersigned counsel that the Federal Rules of Civil Procedure cannot be overruled by a local rule.[2]  Defendant's demand that Plaintiffs

21
22

---

23
24
25
26
27

    [2]    *See, Meyer v. T-Mobile USA Inc.,* 2012 WL 2906051. *3 (N.D. Cal. 2012).  (Holding that Rule 201(f), Fed.R.Evid., takes precedence over local rules.)  *Meyer* cited and quoted *Marshall v. Gates,* 44 F.3d 722 (9th Cir. 1995), which stated, "We are ... under an obligation to construe local rules so that they do not conflict with the federal rules, and we have exercised our ingenuity in doing so ..."  *See, Marshall v. Gates,* 44 F.3d, at 725.  *See also, PSM Holding Corp. v. National Farm Financial Corporation,* 2013 WL 12080306, * 19 (C.D. Cal. 2013) (*citing*

28

omit prescribed material was therefore unjustified.

As noted above, the Case Management Statement is exactly as prescribed by Rule 26(f)(3) of the Federal Rules of Civil Procedure, Civil L.R. 16-8 through 16-9, and the Standing Order. It includes all information required by those Rules and the Standing Order, in the same order set out in those rules and that Order. There was never a dispute that the Case Management Statement must comply with all applicable rules – the dispute was, and is, how those various rules either do or do not displace each other.

## CONCLUSION

Plaintiffs' undersigned counsel's positions, statements, and actions have been both objectively reasonable, and in good faith. The show-cause order should be discharged.

If this Court were to hold that the Case Management Statement, as originally submitted, was not in proper form, Plaintiffs' undersigned counsel would be pleased to re-submit a new Case Management Statement (in cooperation with Defendant's counsel) which will conform to whatever directive the Court may issue.

///
///
///
///
///
///
///

*Meyer*). *But see, contra: Bhatia v. Office of U.S. Atty., Northern Dist. of Cal.,* 2011 WL 1298763 (N.D. Cal. 2011).

1  Dated: 7 September 2022

Respectfully submitted,

DAVID J. GALLO
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
DEL MAR, CALIFORNIA 92014-3769
Telephone: (858) 509-3652


          /s/ David J. Gallo
By:    David J. Gallo,
       California Bar No. 127722
       Attorneys for Plaintiffs, S. WESTRON,
       and J. MILNE

[RESPONSE TO ORDER TO SHOW CAUSE.wpd]